IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-144-FL

| | | |
|---|---|---|
| MEGAN HEDGEPETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| NASH COUNTY, NATALIE WEBB in her | ) | |
| individual capacity, and MARY REEVES | ) | |
| in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 44). The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff, a black and Native American woman, commenced this civil rights action October 1, 2021, against defendant Nash County and defendants Natalie Webb ("Webb") and Mary Reeves ("Reeves"), two employees of the Nash County Department of Social Services ("NCDSS"). Plaintiff asserts claims under 42 U.S.C. §§ 1981 and 1983, for sex and race discrimination, and for violations of her Fifth and Fourteenth Amendment due process rights, in connection with a reduction of her food stamp benefits and her arrest for food stamp fraud. She also asserts state law claims for malicious prosecution, abuse of process, and infliction of emotional distress. She seeks compensatory and punitive damages, interest, costs and fees.

Following a period of discovery,[1] defendants filed the instant motion, relying upon a statement of material facts and appendix including the following: 1) depositions of plaintiff, Reeves, and Webb; 2) declarations by Reeves and Webb; 3) correspondence and documentation received by NCDSS regarding plaintiff's food stamp benefits eligibility and fraud investigation; 4) internal NCDSS forms and investigative reports; 5) appeal forms filed by NCDSS with the North Carolina Department of Health and Human Services and decision following the appeal; 6) North Carolina Association of County Commissioners liability and property insurance coverage contracts; and 7) correspondence from a county prosecutor to NCDSS and a notice of voluntary dismissal filed by the same.

In response, plaintiff relies upon the same depositions,[2] as well as the same correspondence and documentation received by NCDSS regarding plaintiff's food stamp benefits eligibility, appeal forms, and voluntary dismissal.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff was born in 1990 and began receiving food stamps at age 21, in or about 2011, at which time she was living with her mother on Womble Road, in Nashville, within Nash County, North Carolina. (Pl's Dep. 7-9). Their home was foreclosed in 2018, and plaintiff moved then to

---

[1] On December 28, 2022, the court stayed the deadlines for mediation and dispositive motions, to be reset upon resolution of an anticipated motion on a discovery dispute noticed by plaintiff. A magistrate judge entered an order on March 28, 2023, granting in part and denying in part plaintiff's motion to compel discovery, directing defendants to supplement discovery responses and allowing plaintiff to conduct any follow up discovery by May 12, 2023. On May 16, 2023, the court entered a protective order governing production of documents found within NCDSS case records concerning plaintiff. In an amended case management order, entered December 27, 2023, the court set a January 29, 2024, deadline for dispositive motions.

[2] The deposition transcripts upon which defendants rely do not include page numbers and do not show certain redacted personally-identifying information, unlike the transcripts upon which plaintiff relies which include both. Throughout this order, page numbers in citations to transcripts are to those filed by plaintiff (DE 53-2, -3, and -4) and refer to the page numbers showing on the face of the transcripts and not the page number supplied by the court's case management / electronic case filing system, in the event of a difference between the two.

a residence on Medoc Mountain Road, in Hollister, within Halifax County, North Carolina.  (Id. at 8-9).

Plaintiff has three children, a son born in or about 2006, one daughter born in 2013, and a second daughter born in 2017.  (Id. at 9-10).  Plaintiff was living at her residence in Hollister with her three children in 2018.  (Id. at 10).  The father of plaintiff's two daughters is Tawaido Brown ("Brown").  (Id. at 15).  Plaintiff "first started a relationship" with Brown in 2011 or 2012, and was in the relationship with him "on and off throughout" until in or about 2019 or 2020.  (Id. at 16).  Plaintiff is not "currently together" with Brown, and plaintiff states that his address is in Greenville, within Pitt County, North Carolina.  (Id.).

Defendant Webb worked for the NCDSS from 1987 until her retirement in December 2018. In 2018, her position was an "Income Maintenance Fraud Investigator," one of two investigators within the "Program Integrity Department" of NCDSS, "responsible for investigation of referrals for alleged fraud related to any of the programs for which NCDSS offered services."  (Webb Decl. (DE 48-5) ¶ 3).  In April 2018, Webb completed a "suspected fraud referral" form, noting she had received an anonymous tip regarding plaintiff's household composition, as it relates to food stamp benefits, in that the anonymous tip stated that plaintiff had been residing at her Medoc Mountain Road address "for the past 5 years with [] Brown," who is "not employed but gets a check."  (Defs' Ex. 6 (DE 48-6) at 2).[3]  Webb further noted that if Brown "has been residing in the home then he has to be included in the assistance unit and his income counted."  (Id.).

In the course of her investigation, Webb spoke with plaintiff's uncle "who confirmed that [] Brown lived with her in Halifax County and had been for at least five years."  (Webb Decl. (DE

_____

[3]      Page numbers in citations to exhibits in the record, other than depositions, are to the page number specified in the court's CM/ECF system and not the page number, if any, showing on the face of the document.

48-5) ¶ 9).  Webb's investigation included "requesting that the post office verify who receives mail at the address; checking information recorded with the North Carolina Division of Motor Vehicles, the Social Security Administration, and the Employment Security Administration; and obtaining information from school systems, banks, an insurance company, and social media."  (Id. ¶ 10). Webb  "collected enough evidence to substantiate the allegation that [] Brown was living in the Halifax County residence with [plaintiff] and her children."  (Id. ¶ 11).  "As a result, an overpayment of benefits had been issued based on her failure to report that [] Brown was residing in the home."  (Id.).[4]

Plaintiff requested a hearing July 23, 2018.  (Defs' Ex. 7 (DE 48-7) at 2).  Following a hearing conducted August 30, 2018, a state hearing officer with the North Carolina Department of Health and Human Services determined that NCDSS's decision to decrease benefits was "not supported by the evidence" and remanded "to remove [] Brown's income," "recalculate the allotment," and "reassess [plaintiff's] allotment and issue a new recertification determination." (Pl's Dep. Ex. 1 (DE 48-1) at 123).  NCDSS appealed the hearing officer's decision, on September 21, 2018, which appeal was transmitted via facsimile by defendant Reeves, who held the title of "Food Stamp Supervisor."  (Reeves Dep. at 5; see Defs' Ex. 8 (DE 48-8) at 2-3).  The documents faxed by Reeves stated that the "Food and Nutrition Services" department "was waiting for clarification from Program Integrity at the state level to see what documentation and verification could be provided to the Hearing Officer due to open on-going investigation," and it "never heard back from Program Integrity on what could and couldn't be provided as verification to the Hearing Officer."  (Defs' Ex. 8 (DE 48-8) at 3).  The North Carolina Department of Health and Human

---

[4]    Internal investigative notes in the record for NCDSS, dated July 5, 2018, explain that "even though [plaintiff] reported the move to Halifax County, Nash County has to do the recertification [of benefits] before the case is transferred to Halifax County."  (Pl's Ex. 6 (DE 53-4) at 2).

4

Services affirmed the hearing officer's decision on September 27, 2018. (Def's Answer (DE 10) ¶ 26).

Defendant Webb "did not attend the food stamp eligibility hearings and the outcome of those hearings was unrelated to [her] investigation." (Webb Decl. (DE 48-5) ¶ 14). According to defendant Webb, "[t]he purpose of the food stamp eligibility hearings was to determine [plaintiff's] eligibility to receive benefits, not to determine whether [plaintiff] committed fraud." (Id. ¶ 15). "The purpose of [defendant Webb's] investigation was to determine whether: all household information was reported accurately; all the policies and procedures of the food stamp program were adhered to; and all reportable changes had been made." (Id.).

According to Webb, plaintiff "was uncooperative and declined to speak with [Webb] one-on-one" (Id. ¶ 11). With respect to a Geico insurance form received by Webb, "the same day that [Webb] received it, Webb called Geico and they said it didn't come from them." (Reeves Dep. p. 94). According to Webb, "there were some questions about the authenticity of that letter." (Webb Dep. p. 49).

"Based on [her] substantiation of the fraud allegations, [Webb] typed the relevant information into a criminal warrant for food stamp fraud and presented it to a magistrate." (Webb Decl. (DE 48-5) ¶ 14). "The magistrate signed the warrant after finding probable cause," (Id.), and the warrant issued October 4, 2018 for "felony food stamp fraud." (Defs' Ans. (DE ¶¶ 10, 27).

Plaintiff thereafter was arrested, (Id. ¶ 28), and she was "in custody for no more than two hours." (Def's Stmt. (DE 46) ¶ 13). In October 2018, defendant Webb prepared a "Superior Court Summary," which included a discussion of evidence from her investigation, including that plaintiff "produced two letters supposedly from GEICO showing that [] Brown resides [in] Greenville, N.C.

5

. . . . Contact with GEICO verified that their company did not send out these pieces of mail and confirmed they are fraudulent." (Pl's Ex. 6 (DE 53-6) at 2). "After December 2018, [Webb] retired and was not involved in [plaintiff's] case." (Webb Decl. (DE 48-5) ¶ 16).

Charges against plaintiff for food stamp fraud were dismissed by the Nash County prosecutor on April 5, 2019. (Reeves Dep. Ex. 15 (DE 48-2) at 115). On that same date, the prosecutor sent a letter to NCDSS explaining his basis for dismissing the charge, including, inter alia:

> I have corresponded with [plaintiff's] attorney for the criminal case in an effort to try and resolve it with some type of lesser included plea, and those conversations were not fruitful. According to her attorney, [plaintiff] would contend she obtained the letter from GEICO's website rather than from a GEICO office, and would be able to reproduce this process in front of the jury if she were to be tried.

(Defs' Ex. 11 (DE 48-11) at 2).

## COURT'S DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute

6

is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient

evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's]

favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary

judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached

exhibits, and depositions] must be viewed in the light most favorable to the party opposing the

motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable

probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the

necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace

v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law

is warranted where "the verdict in favor of the non-moving party would necessarily be based on

speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir.

2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at

489-90.

B.    Analysis

1.    Procedural Argument

Plaintiff argues, as a threshold matter, that defendants' motion must be denied due to

defendants' asserted failure "to litigate the matter on multiple occasions such that there should be

7

a trial by default." (Pl's Mem. (DE 53) at 5). Plaintiff points to defendants' alleged failure to respond timely to plaintiff's complaint, as well as defendants' alleged failure to make any "effort to prosecute their case" after a protective order was entered May 16, 2023. (Id. at 2).

Plaintiff's procedural argument is without merit. The court previously denied plaintiff's motion for entry of default, finding no "history of dilatory action." (Jan. 10, 2022, Order (DE 18) at 2). The court also reiterated the "strong preference in the law that . . . claims and defenses be disposed of on their merits," (Id.), which the instant motion now seeks to do. In addition, defendants timely filed the instant motion by the deadline set by the court in its December 27, 2023, amended case management order. (DE 43). Therefore, there is no basis for denying the instant motion due to delay on the part of defendants. While this court inadvertently delayed until December 27, 2023, in lifting the stay entered March 28, 2023, as plaintiff notes, neither party "motioned to lift the stay." (Pl's Mem. (DE 53) at 7). The court accordingly proceeds to address the merits of defendants' motion.

2.      Substantive Arguments

Defendants argue that summary judgment is required in their favor because plaintiff has not demonstrated a genuine issue of fact on the merits of any of her claims and she has not brought forth sufficient facts to overcome defendants' asserted immunity. The court agrees.

a.      Federal Claims based upon Arrest and Prosecution

"When a person seeks to challenge a warrant-backed arrest under the Fourth Amendment as lacking probable cause, that challenge at most can be pursued through a cause of action for malicious prosecution." Thurston v. Frye, 99 F.4th 665, 673 (4th Cir. 2024). "A malicious prosecution claim under § 1983, like a false arrest claim, is properly understood as a Fourth Amendment claim for unreasonable seizure." English v. Clarke, 90 F.4th 636, 647 (4th Cir. 2024).

8

"The difference is that malicious prosecution covers unconstitutional seizures supported by legal process: arrests made pursuant to a warrant and detentions during the period after legal process issued—e.g., post-indictment or arraignment." Id.[5] To succeed on such a claim, a plaintiff must show that the defendant "(1) caused (2) a seizure of [plaintiff] pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [plaintiff's] favor." Id.

Plaintiff contends that defendant Webb is liable for false arrest and malicious prosecution because she supplied misleading and false information to the superior court judge who issued a warrant for her arrest. "Warrants . . . usually conclusively determine the existence of probable cause, but not when an officer deliberately supplied misleading information that influenced the judge's . . . decision." Id.

"A party challenging the veracity of a warrant application must show that the officer(s) deliberately or with a reckless disregard for the truth made material false statements in the warrant application, or omitted from that application material facts with the intent to make, or with reckless disregard of whether they thereby made, the application misleading." Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 556 (4th Cir. 2017). "Reckless disregard can be evidenced by an officer acting with a high degree of awareness of a statement's probable falsity, meaning that when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of [her] statements or had obvious reasons to doubt the accuracy of the information [she] reported." Id. "Omissions are made with reckless disregard when the evidence demonstrates that [an] officer failed to inform the judicial officer of facts [she] knew would negate probable cause." Id.

---

[5] In case citations throughout this order, internal quotations and citations are omitted unless otherwise specified.

"Moreover, a plaintiff must demonstrate that the false statement or omission is material, that is, necessary to the neutral and disinterested magistrate's finding of probable cause." Id. "To determine materiality, the Court must excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." Id. "Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." Id. at 555. "While probable cause demands more than a mere suspicion, evidence sufficient to convict is not required." Gomez v. Atkins, 296 F.3d 253, 262 (4th Cir.2002). "[A]n officer is not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." Miller v. Prince George's Cnty., MD, 475 F.3d 621, 630 (4th Cir. 2007).

Plaintiff's claim fails on multiple levels. As an initial matter, plaintiff fails to demonstrate a genuine issue of fact that defendant Webb deliberately made material false statements or omitted "material facts with the intent to make, or with reckless disregard of whether they thereby made, the application misleading." Humbert, 866 F.3d at 556. Plaintiff points to defendant Webb's own deposition testimony where she was asked whether she informed the magistrate "that there were two hearings which determined that there was no food stamp fraud." (Webb Dep. at 31). Webb responded, "No. That had nothing to do with the program integrity investigation. The food stamp hearing and program integrity are two different things." (Id.). This testimony does not give rise to a plausible inference of a deliberate omission "of facts [she] knew would negate probable cause," Humbert, 866 F.3d at 556, in light of Webb's stated position that the two prior hearings "had nothing to do with the program integrity investigation." (Webb Dep. at 31). Plaintiff also

cannot rely upon her own counsel's assumptions stated in the question, because "questions . . . of counsel are not evidence." United States v. Caro, 597 F.3d 608, 626 (4th Cir. 2010).

In addition, it is speculative to infer a deliberate omission based upon other evidence in the record regarding defendant Webb's understanding of the differences between the two prior hearings and her own fraud investigation. For example, defendant Webb testified in her declaration that the "two food stamp eligibility hearings . . . were completely unrelated to my program integrity investigation based on the fraud referral." (Webb Decl. (DE 48-5) ¶ 14). She "did not attend the food stamp eligibility hearings and the outcome of those hearings was unrelated to [her] investigation." (Id.). Further, the "purpose of the food stamp eligibility hearings was to determine [plaintiff's] eligibility to receive benefits, not to determine whether [she] committed fraud." (Id. ¶ 15).

Webb's understanding is consistent with the description of the food stamp eligibility hearings in the record. For example, the first decision, dated September 5, 2018, states that "[n]o information gathered by the investigator was submitted," referring to the investigative information gathered by defendant Webb. (DE 48-1 at 122). It further states that based on the information that was supplied, "it is unclear as to where [] Brown lived during the recertification and currently." (Id.). The decision notes "an insurance letter from Geico," but it does not state that any issue was raised as to whether it was fraudulent, and the decision does not include any examination of fraud. (Id. at 122-123).

Defendant Webb's understanding is further consistent with the prosecutor's statement that "it does appear, as you and other members of DSS staff have told me that nothing was said during the hearing about the verification of address letter from GEICO [plaintiff] had provided possibly being fraudulent." (DE 48-11 at 2). Webb's summary of the evidence regarding fraud submitted

11

to the superior court discusses her basis for concluding that the GEICO letter was fabricated, which issue is nowhere presented in the materials regarding the two prior hearings.  (DE 48-3 at 95). Plaintiff does not point to any evidence to the contrary regarding defendant Webb's understanding of the two prior food stamp eligibility hearings.  Therefore, plaintiff fails to demonstrate a genuine issue of fact that any "[o]missions [were] made with reckless disregard" by virtue of defendant Webb withholding "facts [she] knew would negate probable cause."  Humbert, 866 F.3d at 556.

In addition, and in the alternative, plaintiff's claim also fails as a matter of proof because the warrant application itself is not in the record.  Accordingly, the court is unable to undertake the necessary inquiry to "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." Humbert, 866 F.3d at 556.  In other words, plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. Ltd., 475 U.S. at 586-87.  Regarding the contents of the warrant affidavit, the court is left with the undisputed fact that "[a] neutral magistrate signed the warrant based on probable cause to believe Plaintiff committed felony food stamp fraud,"  (Def's Stmt. (DE 46) ¶ 18),[6] and defendant Webb's statement that "[b]ased upon [her] substantiation of the fraud allegations, I typed the relevant information into a criminal warrant for food stamp fraud and presented it to a magistrate."  (Webb Decl. (DE 48-5) at 4) (emphasis added).  Adding the fact of two prior food stamp eligibility hearings to such "relevant information" regarding fraud, (Id.), does not "negate probable cause" for food stamp fraud.  Humbert, 866 F.3d at 556.

Plaintiff contends that "two hearing officers found that she had not committed fraud."  (Pl's Mem. (DE 53) at 12).  Plaintiff, however, does not point to any evidence for this contention, and

---

[6]    Where plaintiff did not file an opposing statement of material facts, each statement in defendants' statement of material fact "will be deemed admitted for purposes of the motion."  Local Civil Rule 56.1(a)(2).

she does not provide a citation to the hearing officers' decisions. Notably, the September 5, 2018, hearing officer decision in the record does not make reference to any findings concerning "fraud." (See DE 48-1 at 122-123). Even considering plaintiff's own quotation of language from a September 27, 2018, hearing officer's decision, in her brief (without any citation to the record), this does not make reference to any findings concerning "fraud." (See Pl's Br. (DE 53) at 4) (purporting to quote an excerpt of decision stating that "County DSS presented no evidence to support their fining that . . . [Brown] resided at the same address")). In sum, plaintiff fails to demonstrate a genuine issue of fact that defendant Webb violated plaintiff's constitutional rights by causing a false arrest or malicious prosecution.[7]

In addition, and in the alternative, defendant Webb is entitled to qualified immunity because plaintiff has not demonstrated a violation of a "clearly established right" based on the present record. Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017). "Before concluding that an officer has breached a clearly established right," the court "must identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." Id. Plaintiff has not identified any such case. For example, neither case cited by plaintiff, Miller, 475 F.3d at 631, nor Humbert, 866 F.3d at 556, involved circumstances, as here, where an officer's alleged warrant affidavit asserted facts as reflected in her own investigative files, and the plaintiff's claim was based on determinations made in prior administrative proceedings.

Therefore, plaintiff's claim for federal malicious prosecution and false arrest fails as a matter of law.

---

[7] For the same reason, plaintiff has not demonstrated a federal claim for malicious prosecution or false arrest against defendant Reeves. Furthermore, claims against defendant Reeves must be dismissed as a matter of law because she is not alleged to have been personally involved in the decision to seek a warrant for plaintiff's arrest. (See Reeves Dep. p. 22).

b.     Procedural Due Process Claim

Plaintiff asserts a procedural due process claim on the basis that she was deprived adequate notice and opportunity to be heard before her benefits were reduced. Defendants argue that plaintiff fails to demonstrate a genuine issue of material fact on this claim.[8] The court agrees.

As a general rule, "when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process." Goldberg v. Kelly, 397 U.S. 254, 264 (1970). The United States Court of Appeals for the Fourth Circuit, however, has "effectively distinguished the due process rights of food stamp recipients from those individuals in cases such as Goldberg, who received welfare benefits unlimited by any statutory duration period." Holman v. Block, 823 F.2d 56, 59 (4th Cir. 1987).

"Under the controlling regulations, applicants for food stamps must have their income verified and one member of the household must appear for a personal interview with the local social service agency before eligibility can be determined." Id. at 57. "A household found to be eligible is certified to receive benefits for a specified certification period that is usually between three to twelve months." Id. "An applicant who reapplies in a timely fashion and who is found eligible is entitled to be certified for a new certification period beginning at the end of the current period." Id. "An applicant who is denied recertification may request a hearing, but benefits terminate at the end of the certification period regardless of the pendency of such a hearing. Id. at 57-58.

Accordingly, "the property interest of the recipients [of food stamps is] of a limited nature." Id. at 59. For example, in Holman, the court held that a "three week interruption in the [plaintiffs']

---

[8]     Plaintiff asserts a procedural due process claim under both the Fifth and Fourteenth Amendments. Because the court determines that plaintiff has not demonstrated a procedural due process violation, the court does not reach defendants' alternative argument that the claim is not cognizable against state actors under the Fifth Amendment.

benefits was not in violation of their due process right because they had no protected interest in the continuous receipt of food stamps." Id. The delay in that case was attributable to the failure of the plaintiffs' to "verify income." Id. at 58. Once they had verified their income, they were "certified on an expedited basis for a period beginning retroactively" on a date approximately three weeks from the expiration of their last certification period. Id. The court held that no hearing was required prior to the three week period, and that "a full and fair opportunity to achieve recertification was accorded to the [plaintiffs]." Id. at 59 & n. 4.

Plaintiff fails to demonstrate a genuine issue of material fact under the foregoing standards. According to the North Carolina Department of Health and Human Services hearing decision in the record, plaintiff was "recertified in June and early July 2018," with a "notice being mailed July 10, 2018," to plaintiff that the county "determined the father of the [plaintiff's] children lived with" plaintiff. (DE 48-1 at 121). "The additional income caused a decrease in benefits." (Id.). In addition, the "County had and still has an IPV[9] investigation ongoing" concerning plaintiff. (Id. at 122). In these circumstances, plaintiff does not have a right to a "pre-termination evidentiary hearing" as would be required for a termination of welfare benefits under Goldberg, 397 U.S. at 264.

Plaintiff argues that she "provided all documents that were requested of her," suggesting that defendants had no basis either to reduce her benefits or to delay reinstatement of them. (Pl's Mem. (DE 53) at 13). Plaintiff cites, for example, her lease, a note from her mother, her children's school records, and "insurance documents." (Id.). But, plaintiff cites no evidence in the record for the proposition that the cited documents satisfied defendant's requests. Indeed, defendant Webb states plaintiff was "uncooperative" and that "using the available resources and case file

---

[9]     According to the county's case notes in the record, "IPV" is an acronym for "Intentional Program Violation." (DE 53-4 at 3).

information, [Webb] collected enough evidence to substantiate the allegation that [] Brown was living in the Halifax County residence with [plaintiff]." (Webb Decl. (DE 48-5) ¶ 11). Webb also testified that "there were some questions about the authenticity of [the] letter" regarding Brown's insurance. (Webb Dep. at 49).

In sum, plaintiff fails to demonstrate a genuine issue of material fact that she was deprived of "a meaningful opportunity to be heard at an appropriate time." Holman, 823 F.2d at 59. Therefore, her procedural due process claim fails as a matter of law.

.        c.        Race and Sex Discrimination Claim

To demonstrate race and sex discrimination under § 1981 and § 1983, a plaintiff must, at a minimum, bring forth evidence "to support a reasonable inference that the decisionmakers were motivated by" race or sex. Woods v. City of Greensboro, 855 F.3d 639, 647–48 (4th Cir. 2017) (race); Wilcox v. Lyons, 970 F.3d 452, 458 (4th Cir. 2020) (sex).[10] When a plaintiff seeks to rely upon comparison to others, she must "demonstrate plausibly that [s]he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Sheppard v. Visitors of Virginia State Univ., 993 F.3d 230, 238 (4th Cir. 2021).

Plaintiff's claim fails as a matter of law because she does not bring forth evidence upon which to infer decisionmakers were motivated by race or sex nor that she was treated differently from others similarly situated. Indeed, her claim is precluded by the undisputed facts that "[n]o

---

[10]        Where plaintiff asserts a race discrimination claim both under § 1981 and § 1983, and a sex discrimination claim under § 1983, the court applies the standard under § 1983, which is the same as that under Title VII, in resolving these claims. See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 586 (4th Cir. 2015). Because dismissal is required under this standard, the court does not reach the heightened "but-for causation standard" for a § 1981 race discrimination claim, which requires a plaintiff to show "but for race, [she] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).

16

one at NCDSS made any comments to Plaintiff about" her race or sex, (Defs' Stmt. (DE 46) ¶¶ 5, 8), coupled with the lack of any comparator evidence.

Plaintiff argues that the following facts demonstrate a motivation based upon race:

> Defendants commented on the fact that Plaintiff had multiple children. They forecast her as a woman who lived in an impoverished area without a mailbox. They have stereotyped her as someone who did not work. Defendants claimed that the man who they were adamant lived with her did not work.

(Pl's Mem. (DE 53) at 13). Under the circumstances of this case, however, where defendants by virtue of their employment duties were tasked with determining eligibility for food stamp benefits and intentional program violations, commenting on the number of children, absence of a mailbox, and lack of work do not give rise to an inference of discrimination. Here, where "the necessary inference is so tenuous that it rests merely upon speculation and conjecture," summary judgment must be granted to defendants on this claim. Lovelace, 681 F.2d at 241.

   d. Monell Claim

Plaintiff asserts a claim based upon policies and practices of defendant Nash County, pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 661 (1978) However, where "there are no underlying constitutional violations by any individual, there can be no municipal liability." Young v. City of Mt. Ranier, 238 F.3d 567, 579 (4th Cir. 2001); Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996) (stating that in the absence of any underlying constitutional deprivation, liability cannot be placed on the municipality). Therefore, plaintiff's Monell claim fails on this basis alone.

In addition, and in the alternative, plaintiff fails to bring forth evidence demonstrating that Nash County policies caused a deprivation of her rights or that a pattern of violations established a "custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). Plaintiff suggests that the lack of reports and records produced by defendants demonstrates

17

defendant Nash County maintained an improper policy towards arrest warrants. But, such a suggestion based upon an alleged omission in policy does not establish "that the existence of a policy, or any part of it, was the cause of [his] injury." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). With respect to omissions, plaintiff's claim likewise fails due to a lack of proof. Plaintiff must show "continued inaction in the face of documented widespread abuses." Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999). Here, it is undisputed that "[p]laintiff does not know of any other instances where an individual was arrested for food stamp fraud based on an investigation by NCDSS." (Defs' Stmt. (DE 46) ¶ 12). Accordingly, plaintiff's Monell claim premised upon express policy or omission in policy fails as a matter of law.

      e.     State Law Malicious Prosecution and Abuse of Process

Where the court has determined herein that "there was, as a matter of law, probable cause for [plaintiff's] arrest and detention, [her] state law malicious prosecution claim fails as well." Durham v. Horner, 690 F.3d 183, 190 (4th Cir. 2012); see Quarles v. Weeks, 815 F. App'x 735, 738 (4th Cir. 2020) (same, applying North Carolina law). Such probable cause also precludes plaintiff's claim for abuse of process, where plaintiff cannot as a result establish that "use of the process [was] not proper in the regular prosecution of the proceeding." Barnette v. Woody, 242 N.C. 424, 431 (1955). Therefore, plaintiff's state law malicious prosecution and abuse of process claims must be dismissed as a matter of law.

      f.     Infliction of Emotional Distress

To proceed on a claim for emotional distress, a plaintiff must present evidence linking defendants' conduct to a "severe and disabling emotional or mental condition." Waddle v. Sparks, 331 N.C. 73, 83 (1992). Plaintiff fails to bring forth evidence sufficient to create a genuine issue of fact meeting this standard, where it is undisputed that "[n]either [p]laintiff nor her children

received any medical treatment following [p]laintiff's arrest," plaintiff "has never been diagnosed with a mental disorder" or "emotional disorder," and plaintiff "does not have any medical bills associated with any of the events alleged in the [c]omplaint." (Defs' Stmt. (DE 46) ¶¶ 14-17). Plaintiff's testimony regarding her reaction to her arrest, including that "it was very draining and stressful for [her] and [her] kids," (Pl's Dep. at 50), also is not sufficient to meet this standard. See Waddle, 331 N.C. at 83.

In addition, plaintiff has not demonstrated "extreme and outrageous conduct" necessary to establish a claim for emotional distress, in light of the court's determination that defendant Webb secured the arrest warrant on the basis of probable cause in the course of her duties. See Dickens v. Puryear, 302 N.C. 437, 452 (1981); Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Finally, in the alternative, for the same reason, plaintiff has not brought forth evidence of "malice" sufficient to overcome public official immunity for defendants Webb and Reeves. See R.A. v. Johnson, 36 F.4th 537, 545 (4th Cir. 2022) (holding that "mere reckless indifference is insufficient" to overcome public official immunity). Similarly, defendant Nash County is entitled to governmental immunity where its liability insurance preserves its "sovereign immunity and/or governmental immunity" (DE 48-9 at 20). See Cannon v. Peck, 36 F.4th 547, 574 (4th Cir. 2022) (holding a "governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy").

In sum, plaintiff has not brought forth sufficient evidence to demonstrate a genuine issue of material fact on any of her claims. Therefore, defendants' motion must be granted.

19

**CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment (DE 44) is GRANTED.

The clerk is DIRECTED to close this case.

SO ORDERED, this the 14th day of June, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge